## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

GREGORY PICKENS,              )
                                       )
and                               )
                                       )
RYAN RINZ                   )
               Plaintiffs,      )
v.                                 )
                                       )
THE PROCTER & GAMBLE COMPANY, )
an Ohio Corporation,         )
                                       )
                                       )
               Defendant.     )

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs, Gregory Pickens and Ryan Rinz (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated throughout the State of Texas, the State of Pennsylvania, and the United States, file this Class Action Complaint ("CAC") against the Procter & Gamble Company (the "Defendant") and in support state the following:

### NATURE OF ACTION

1.     This is a class action lawsuit by Plaintiffs, and others similarly situated, who purchased certain aerosol antiperspirant and deodorant sprays manufactured, marketed, sold and/or distributed by Defendant. Defendant distributes, markets, labels, and sells several over-the-counter body spray products under the brand names "Old Spice®" and "Secret®" (collectively, the "Body Spray Products"). Several of Defendant's Body Spray

Products have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Body Spray Products was not disclosed in the products' label, in violation of state and federal law. Plaintiffs and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the Body Spray Product(s) they purchased. Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiffs are citizens of states different from at least one Defendant.

3.      This Court has jurisdiction over Defendant because Defendant is headquartered in this State and is authorized to conduct and do business in Ohio. Defendant has marketed, promoted, distributed, and sold the Body Spray Products in Ohio and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

2

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District and Defendant is subject to the personal jurisdiction of this Court, 28 U.S.C. § 1391(b)(3).

## THE PARTIES

5.      Plaintiff Gregory Pickens resides in Red Oak, Texas, and at all times relevant hereto has been a resident and citizen of the State of Texas. In or around November 2021, Plaintiff Pickens purchased Defendant's Old Spice® Pure Sport aerosol antiperspirant at Walmart located at 100 S Ryan Dr, Red Oak, TX 75154. At the time of purchase, Plaintiff Pickens was unaware that Defendant's Body Spray Products may be adulterated with benzene. Plaintiff Pickens purchased the Defendant's Body Spray Products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe, and effective. Plaintiff Pickens would not have purchased Defendant's Body Spray Products had he known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff Pickens suffered injury in fact when he spent money to purchase Defendant's Body Spray Products that he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. A photo of the Body Spray Products purchased by Plaintiff Pickens is immediately below.



6.     Plaintiff Ryan Rinz resides in Norristown, Pennsylvania, and at all times

relevant has been a resident and citizen of the State of Pennsylvania. On or around 2020,

Plaintiff Rinz purchased Defendant's Old Spice® Sweat Defense, Stronger Swagger, Dry

Spray, Sweat & Odor Protection aerosol antiperspirant at Walgreens located at 2803 W

Main St, Norristown, PA 19403. At the time of purchase, Plaintiff Rinz was unaware that

Defendant's Body Spray Products may be adulterated with benzene. Plaintiff Rinz

purchased the Defendant's Body Spray Products on the assumption that the labeling of

these products was accurate and that the products were unadulterated, safe, and

effective. Plaintiff Rinz would not have purchased Defendant's Body Spray Products had

he known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff Rinz suffered injury in fact when he spent money to purchase Defendant's Body Spray Products that he would not otherwise have purchased absent Defendant's misconduct, as alleged herein. A photo of the Body Spray Products purchased by Plaintiff Rinz is immediately below.



7.     Defendant is an Ohio corporation with its principal place of business at 1 P&G Plaza, Cincinnati, Ohio 45202. As one of the world's leading brands of skin care, hair care, and cosmetics, Defendant distributes its products, including the Body Spray

Products throughout the United States. Defendant's line of Body Spray Products, including the adulterated body spray purchased by Plaintiff and members of the putative class, are available at retail stores throughout Texas, Pennsylvania, and the United States.

## INTRODUCTION

8.      Defendant manufactures, markets, advertises, labels, distributes, and/or sells a variety of Body Spray Products, including:

| Old Spice | Antiperspirant | Pure Sport |
|-----------|----------------|-----------|
| Old Spice | Deodorant | Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air |
| Old Spice | Antiperspirant | Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection |
| Old Spice | Antiperspirant | Sweat Defense, Ultimate Captain, Dry Spray, 48 Hour, Sweat & Odor Protection |
| Secret | Antiperspirant | Powder Fresh 24 HR Aerosol |
| Secret | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose |
| Secret | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Light Essentials |
| Secret | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Waterlily |
| Secret | Antiperspirant | Out Last, Protecting Powder, 48 HR Sweat & Odor, Protection, Dry Spray |

9.      In 2021, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical laboratory, ran tests on a variety of Defendant's Body Spray Products. Specifically, Valisure tested numerous lots of Defendant's Body Spray Products. Through its testing, Valisure discovered that certain of the Body Spray Products contain benzene, with values ranging from less than 0.1 parts per million ("ppm"), 0.10 ppm to 2 ppm, and more than

2 ppm. In two of the three samples of the product purchased by Plaintiff Pickens tested by Valisure, Valisure found benzene values over 17 ppm. The third sample contained a benzene level of 3.34 ppm. In the single sample of the product purchased by Plaintiff Rinz, Valisure found benzene levels of 4.54 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[1] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendant's Body Spray Products.

10.     On November 3, 2021, Valisure filed a citizen's petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendant's Body Spray Products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502 of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's citizen petition.

11.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. Petroleum is a major source of benzene in the United States. The health hazards of benzene have been recognized for over one hundred years.

---

[1] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[2] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[3] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[4]

Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[5] and classifies benzene as a "Class 1" solvent that should be "avoided."[6]  FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the

---

[2] DEP'T OF HEALTH AND HUM. SERV.'S, 14TH REPORT ON CARCINOGENS 1 (2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf(emphasis in original).

[3] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

[4] *Id*. at 34.

[5] *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, FDA (last updated Jan. 24, 2018),  https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks- and-other-beverages#q1 (last visited July 22, 2021).

[6] FDA Guidance for Industry, *Q3C – Tables and List Guidance for Industry*, *2, (2017), https://www.fda.gov/media/71737/download.

manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[7]

12.     The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards.[8] The FDA regulates antiperspirants, including the Defendant's Body Spray Products, as over-the- counter ("OTC") drugs rather than as cosmetics. The FDA defines antiperspirant as a "drug applied topically that reduces the production of perspiration (sweat) at that site."[9] As an FDA-regulated product, Body Spray Products must pass certain tests before they are sold.

13.     Per the FDA regulations governing Defendant's Body Spray Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use,"[10] there are certain acceptable active ingredients in products that are labeled as antiperspirant.[11] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for any antiperspirant products, regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the labels of any of the Defendant's Body Spray Products.

14.     The governing regulations provide: "An over-the-counter antiperspirant drug product in a form suitable for topical administration is generally recognized as safe

---

[7] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (2017), https://www.fda.gov/media/71736/download.
[8] *See generally* 21 CFR §§350.1– 352.60.
[9] 21 C.F.R. § 350.3.
[10] Antiperspirant Drug Products for Over-the-Counter Human Use, 68 Fed. Reg. 34,272 (June 9, 2003).
[11] 21 C.F.R. § 350.10.

and effective and is not misbranded if it meets each condition in this part and each general condition established in 330.1 of this chapter."[12] Defendant failed to meet this standard.

15. The manufacture of any misbranded or adulterated drug is prohibited under federal law,[13] Texas state law,[14] and Pennsylvania state law.[15]

16. The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[16]

17. The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[17]

18. Among the ways a drug may be adulterated are:

If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . .[18]

19. A drug is misbranded:

a. "If its labeling is false or misleading in any particular."[19]

b. If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[20]

---

[12] 21 CFR §350.1

[13] 21 U.S.C. §331(g).

[14] *See* Tex. Health & Safety Code Ann. § 431.021(h).

[15] *See* 35 Pa. Stat. Ann. § 780-108 (misbranding); 35 Pa. Stat. Ann. § 780-107 (adulteration).

[16] 21 U.S.C. §331(a); Tex. Health & Safety Code Ann. § 431.021(a); 35 Pa. Stat. Ann. § 780-113(a)(1).

[17] 21 U.S.C. §331(a); Tex. Health & Safety Code Ann. § 431.021(c); 35 Pa. Stat. Ann. § 780-113(a)(1).

[18] 21 U.S.C. §351(a)(2)(B); Tex. Health & Safety Code Ann. § 431.111;
35 Pa. Stat. Ann. § 780-107(1)(i).

[19] 21 U.S.C. §352(a)(1); Tex. Health & Safety Code Ann. § 431.112(a)(1);
35 Pa. Stat. Ann. § 780-108(1).

[20] 21 U.S.C. §352(e)(1)(A)(ii); Tex. Health & Safety Code Ann. § 431.112(d)(1)(A)(ii);
35 Pa. Stat. Ann. § 780-108(5).

      c.    "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[21]

20.     If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[22]

21.     Because Defendant did not disclose benzene, a known human carcinogen, may be present in the Body Spray Products purchased by Plaintiffs and the putative class members, the Body Spray Products are adulterated and misbranded. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in antiperspirant.[23]

22.     Defendant wrongfully advertised and sold the Body Spray Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

---

[21] 21 U.S.C. §352(j); Tex. Health & Safety Code Ann. § 431.112(i); 35 Pa. Stat. Ann. § 780-108(10).

[22] "The labeling of a drug may be misleading by reason (among other reasons) of:. (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2); *See generally* Tex. Health & Safety Code Ann. § 431.112; *See also* 35 Pa. Stat. Ann. § 780-107.

[23] W.H.O. Preventing Disease Through Healthy Environments, *Exposure to Benzene: A Major Public Health Concern* 2 (2010), https://www.who.int/ipcs/features/benzene.pdf.



23.     Analogous to the case at hand, on May 25, 2021, Valisure filed another

citizen's petition with the FDA asking the agency to recall all batches of aerosol sunscreen

that were tested and found to contain unacceptable levels of benzene.

24.     As a result of Valisure's findings, on July 14, 2021, CVS Health and Johnson

& Johnson & Johnson issued voluntary recalls of their aerosol sunscreen sprays.[24]

25.     Valisure's findings after it tested aerosolized sunscreens should have put

Defendant, who is one of the biggest companies within its respective industry, on notice

---

[24] *See* https://www.bloomberg.com/news/articles/2021-07-15/cvs-halts-sales-of-two-of-its-store-brand-sun-care-products (noting the voluntary recall of CVS Health and Johnson & Johnson sunscreens) last accessed July 23, 2021.

that there is or likely could be a pervasive problem of benzene contamination in aerosolized products.

26. But it was not until after the widespread reporting of Valisure's citizen's petition requesting a recall of Defendant's Body Spray Products that, on November 23, 2021, Defendant announced a recall of several of the affected Body Spray Products and offered refunds to consumers who had purchased the Body Spray Products.[25]

27. Defendant's conduct illustrates a blatant disregard for consumer safety.

28. After Defendant announced the recall, P&G spokeswoman Kate DiCarlo said in an emailed statement, "[o]ur manufacturing partner identified an issue with their propellant supply and is implementing additional measures to address the issue identified in the investigation."[26]

29. As a manufacturer of an OTC product, Defendant's "manufacturing partner" had a duty to ensure that the Body Spray Products it manufactured for Defendant did not contain dangerous carcinogens, like benzene.

---

[25] Company Announcement, *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene* (November 23, 2021), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.
[26] Anna Edney, *P&G Recalls Old Spice, Secret Sprays After Carcinogen Found*, Bloomberg, Nov. 23, 2011, https://www.bloomberg.com/news/articles/2021-11-23/p-g-recalls-old-spice-secret-sprays-after-carcinogen-found.

30. As a manufacturer of an OTC product, Defendant's "manufacturing partner" also had a duty not to manufacture products that were adulterated or misbranded.

31. Defendant and its "manufacturing partner" did not disclose to Plaintiffs, consumers, or otherwise that any of Defendant's Body Spray Products may contain *any* amount of benzene or may contain benzene far in excess of the limits set by the FDA.

32. Upon information and belief, Defendant did not take reasonable steps to test – either itself or requesting that its manufacturing partner test – or otherwise assure that its Body Spray Products did not contain any benzene. Had Defendant or its manufacturing partner done so, they would have discovered, as Valisure was able to discover, that its Body Spray Products contained benzene at unacceptable levels.

33. Plaintiffs have standing to represent members of the putative class because there is sufficient similarity between the specific product purchased by the Plaintiffs and the other Body Spray Products not purchased by Plaintiffs. Specifically, each and every one of the Aerosol Antiperspirant Products (i) are marketed in substantially the same way and (ii) fail to include labeling indicating to consumers that the Body Spray Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all of the Body Spray labels are substantially the same.

## CLASS ALLEGATIONS

14

34.    Plaintiff brings this action on behalf of himself and all other similarly situated class members pursuant to Rule 23(a), (b)(2), and (b)(3) and seeks certification of the following classes against Defendant:

**The Texas Class**
All consumers who purchased any Body Spray Product in the State of Texas from December 17, 2019, to the present for personal use or consumption.

**The Pennsylvania Class**
All consumers who purchased any Body Spray Product in the State of Pennsylvania from December 17, 2015, to the present for personal use or consumption.

**The Nationwide Class**
All consumers who purchased any Body Spray Product in the United States from December 17, 2017, to the present.

Excluded from each Class are individuals who allege personal bodily injury resulting from the use of Body Spray Product(s). Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

35.    The members of each Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that each proposed Class contains thousands of purchasers of the Body Spray Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs at this time.

36.    Plaintiffs' claims are typical to those of all Class members because members of the class are similarly injured through Defendant's uniform misconduct described

above and were subject to Defendant's deceptive claims that accompanied each and every Body Spray Product, marketed, distributed, and sold by Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of each Class.

37.     Plaintiffs' claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiffs and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

a.     whether Defendant's Body Spray Products contained benzene;

b.     whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

c.     whether the alleged conduct constitutes violations of the laws asserted;

d.     whether Defendant's alleged conduct violates public policy;

e.     whether Defendant engaged in false or misleading advertising;

f.     whether Defendant and its manufacturer are an association in fact;

g.     whether Plaintiffs and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

h.     whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Body Spray Products that contain benzene, a known human carcinogen.

38.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have retained counsel experienced in

16

complex litigation and class actions. Plaintiffs' counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiffs intend to prosecute these claims vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Class, nor are Plaintiffs subject to any unique defenses.

39. A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiffs and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

40. The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

41. Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin

and prevent Defendant from engaging in the acts described above and requiring Defendant to provide full restitution in the form of a refund of the full purchase price of Body Spray Products to Plaintiffs and Class members.

42.     Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION
## (TEXAS CLASS)
(Violations of the Texas Deceptive Trade Practices-Consumer Protection Act (the "DTPA") Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*)

43.     Plaintiff Pickens incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

44.     The DTPA prohibits "the use or employment by any person of a false, misleading, or deceptive act or practice that is (a) specifically enumerated in Subsection (b) of Section 17.46 of this subchapter; and (b) relied on by a consumer to the consumers detriment." Tex. Bus. & Com. Code Ann. § 17.50(a).

45.     Specifically, the DTPA prohibits any person from:

i.     "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not";[27]

ii.  "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";[28] and

iii.  "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed".[29]

46.  Defendant has engaged, and continues to engage, in conduct that that constitutes "unconscionable action or course of action" in violation of the DTPA.[30]

47.  Defendant's conduct includes representing in its labels that its Body Spray Products contain only the ingredients listed in the label, which is untrue, affirmatively representing that benzene is not an ingredient used in the manufacture of its Body Spray Products and failing to make any mention that its Body Spray Products are adulterated with benzene, a known human carcinogen.

---

[27] Tex. Bus. & Com. Code Ann. § 17.46(5).
[28] Tex. Bus. & Com. Code Ann. § 17.46(7).
[29] Tex. Bus. & Com. Code Ann. § 17.46(24).
[30] "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5).

48. Similarly, Defendant has engaged, and continues to engage, in deceptive, untrue, and misleading advertising. These false representations include, but are not limited to:

    i.    Defendant's website states "[s]afety is at the heart of everything we do. Before we market a new product, we go beyond regulatory compliance to ensure that every ingredient's safety through a four-step, science-based process. We use the same process as regulatory agencies around the world, like US FDA, EPA, the EU, the WHO, and others" and[31]

    ii.    Defendant's website also lists 'benzene' as an "ingredient we do not use in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care." [32]

---

[31] *Product Safety*, https://us.pg.com/product-safety/ (last visited November 29, 2021).
[32] *Ingredients*, https://us.pg.com/ingredients/ (last visited November 29, 2021).



49.     By committing the acts alleged above, Defendant has engaged in unconscionable business acts and practices within the meaning of the DTPA.

50.     Plaintiff Pickens and all Texas Class members purchased Defendant's Body Spray Products for personal, family or household purposes.

51.     Since consumers reasonably rely on Defendant's representation of the ingredients contained in the Body Spray Products' labels and injury resulted from ordinary use of the Body Spray Products, consumers could not have reasonably avoided such injury.

52.     But for Defendant's conduct, Plaintiff Pickens and all Texas Class members would not have purchased Defendant's Body Spray Products.

---

[33] *Id.*

53.     Plaintiff Pickens and all Texas Class members acted as reasonable consumers in light of all circumstances. Specifically, a reasonable consumer would not expect body spray to contain a known carcinogen and would expect any risk of such adulteration would be disclosed by Defendant.

54.     Defendant's non-disclosure caused and would cause a reasonable consumer to buy adulterated body spray, resulting in damages as measured by the purchase price of the body spray. A reasonable consumer would not purchase body spray containing a warning that the body spray may be adulterated with a known carcinogen.

55.     Class damages are sufficiently definitive and objective to calculated with a reasonable degree of certainty. Such damages may be calculated to a reasonable degree of certainty via (without limitation) receipts, credit card and bank statements, suggested retail prices, and Defendant's sales and distribution records.

56.     Plaintiff Pickens and all Texas Class members suffered an ascertainable loss caused by Defendant's conduct because Plaintiff Pickens and the Texas Class members would not have purchased Defendant's Body Spray Products had they known that the products may contain benzene.

## SECOND CAUSE OF ACTION
### (TEXAS, PENNSLYVANIA, AND NATIONWIDE CLASSES)
(Unjust Enrichment)

57.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

58.     Plaintiffs and the Texas, Pennsylvania, and Nationwide Class members conferred a benefit on Defendant by purchasing its Body Spray Products.

59.     Defendant has benefited at Plaintiffs' and the Texas, Pennsylvania, and Nationwide Class members' expense by the sale of the Body Spray Products by collecting the price of the falsely represented products, which consumers paid for because of Defendant's deceptive and misleading advertising and representations and/or omissions.

60.     Defendant's retention of the revenues from Plaintiffs' and the Texas, Pennsylvania, and Nationwide Class members' purchases of its Body Spray Products, under these circumstances, is unjust and inequitable because consumers were misled by Defendant to believe that they were receiving a product that was safe.

61.     Plaintiffs and the Texas, Pennsylvania, and Nationwide Class members were injured because they purchased a product they otherwise would not have purchased, due to Defendant's falsities, misrepresentations and/or omissions.

62.     Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and the Texas, Pennsylvania, and Nationwide Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Texas, Pennsylvania, and Nationwide Class members, as ordered by the Court.

### THIRD CAUSE OF ACTION
### (PENNSYLVANIA CLASS)
(Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
(the "UTPCPL") 73 P.S. § 201–1 *et seq*.)

63.    Plaintiff Rinz incorporates by reference and re-alleges each and every allegation contained above as though fully set forth herein.

64.    The UTPCPL prohibits the use of "unfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of any trade or commerce.[34]

65.    The UTPCPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" as:

   i.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;"[35] and

   ii.    "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."[36]

66.    Defendant has engaged, and continues to engage, in conduct that constitutes "unfair methods of competition" and unfair or deceptive acts or practices" under the UTPCPL.

67.    Defendant's conduct includes representing in its labels that its Body Spray Products contain only the ingredients listed in the label, which is untrue, affirmatively

---

[34] 73 Pa. Stat. Ann. § 201-3(a).
[35] 73 Pa. Stat. Ann. § 201-2(4)(v).
[36] 73 Pa. Stat. Ann. § 201-2(4)(vii).

representing that benzene is not an ingredient used in the manufacture of its Body Spray Products and failing to make any mention that its Body Spray Products are adulterated with benzene, a known human carcinogen.

68. Similarly, Defendant has engaged, and continues to engage, in deceptive, untrue, and misleading advertising. These false representations include, but are not limited to:

    i.    Defendant's website states "[s]afety is at the heart of everything we do. Before we market a new product, we go beyond regulatory compliance to ensure that every ingredient's safety through a four-step, science-based process. We use the same process as regulatory agencies around the world, like US FDA, EPA, the EU, the WHO, and others" and[37]

    ii.    Defendant's website also lists 'benzene' as an "ingredient we do not use in any of our formulated products (health care, skin and personal cleansing, hair care, laundry, home care, and oral care." [38]

---

[37] *Product Safety*, https://us.pg.com/product-safety/ (last visited November 29, 2021).
[38] *Ingredients*, https://us.pg.com/ingredients/ (last visited November 29, 2021).



69.     By committing the acts alleged above, Defendant has engaged in unconscionable business acts and practices within the meaning of the UTPCPL.

70.     Plaintiff Rinz and the Pennsylvania Class members purchased Defendant's Body Spray Products for personal, family or household purposes.

71.     Since consumers reasonably rely on Defendant's representation of the ingredients contained in the Body Spray Products' labels and injury resulted from ordinary use of the Body Spray Products, consumers could not have reasonably avoided such injury.

72.     But for Defendant's conduct, Plaintiff Rinz and the Pennsylvania Class members would not have purchased Defendant's Body Spray Products.

---

[39] *Id.*

73.     Plaintiff Rinz and the Pennsylvania Class members acted as reasonable consumers in light of all circumstances. Specifically, a reasonable consumer would not expect body spray to contain a known carcinogen and would expect any risk of such adulteration would be disclosed by Defendant.

74.     Defendant's non-disclosure caused and would cause a reasonable consumer to buy adulterated body spray, resulting in damages as measured by the purchase price of the body spray. A reasonable consumer would not purchase body spray containing a warning that the body spray may be adulterated with a known carcinogen.

75.     Class damages are sufficiently definitive and objective to calculated with a reasonable degree of certainty. Such damages may be calculated to a reasonable degree of certainty via (without limitation) receipts, credit card and bank statements, suggested retail prices, and Defendant's sales and distribution records.

76.     Plaintiff Rinz and the Pennsylvania Class members suffered an ascertainable loss caused by Defendant's conduct because Plaintiff Rinz and the Pennsylvania Class members would not have purchased Defendant's Body Spray Products had they known that the products may contain benzene.

## FOURTH CAUSE OF ACTION
### (TEXAS, PENNSLYVANIA, and NATIONWIDE CLASSES)
(Breach of Implied Warranty

77.     Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

27

78.     Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Body Spray Products. Defendant knew or had reason to know of the specific use for which its Body Spray Products were purchased.

79.     At the time Defendant marketed and otherwise placed its Body Spray Products into the stream of commerce, it knew of the particular purpose for which Plaintiffs and Class members purchased the Body Spray Products—to have a safe and effective antiperspirant, which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiffs and members of the Class, would have no ability or opportunity to determine the ingredients in the Body Spray Products, but instead would rely on Defendant's representations that the Body Spray Products were suitable for their particular purpose and free from dangerous carcinogens like benzene.

80.     At all times, Plaintiffs and the Class members used the Body Spray Products in the manner that was intended for use.

81.     Defendant provided Plaintiffs and the Class Members with an implied warranty that its Body Spray Products were merchantable and fit for the ordinary purposes for which they were sold and not dangerous or hazardous to the user's health.

82.     Further, as intended consumers and ultimate users of the Body Spray Products, Plaintiffs and Class members are the intended third-party beneficiaries of any contracts between Defendant and retailers from whom Plaintiffs obtained the Body Spray Products, which contained the implied warranty of merchantability and to be fit for

28

ordinary purposes, safe and not hazardous to one's health. Plaintiffs and the Class members, not any retailers, are the parties intended to benefit any such contract because they are the people using the Body Spray Products in the manner intended.

83. In breach of the implied warranty of merchantability, the Body Spray Products that Defendant provided to Plaintiffs and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain dangerous carcinogens with the potential of causing serious injury and/or death. Defendant's Body Spray Products supplied to Plaintiffs and Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Body Spray Products unfit for their ordinary purposes. As such, they are not merchantable.

84. As a direct and proximate result of Defendant's breach, Plaintiffs and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

85. Plaintiffs and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, recission, attorneys' fees, costs of suits, and other relief as appropriate.

**FIFTH CAUSE OF ACTION**
**(TEXAS, PENNSYLVANIA, AND NATIONWIDE CLASSES)**
(Breach of Express Warranty)

86. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

87. Plaintiffs and each Class member formed a contract with Defendant at the time Plaintiffs and the other Class Members purchased Defendant's Body Spray Products. The terms of the contract include the promises and affirmations of fact made by Defendant on its Body Spray Products' packaging and through marketing and advertising, including the promise that benzene is one of the materials "we do not use as ingredients in any of our formulated products." This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract that Defendant entered into with Plaintiffs and each Class member.

88. Defendant expressly warranted that its Body Spray products were fit for their ordinary use, i.e., as a safe and FDA-compliant product suitable for human application "that reduces the production of perspiration (sweat) at that site." Defendant also expressly warranted that its Body Spray Products were not adulterated or misbranded.

89. Defendant's Body Spray Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance with FDA standards, were not suitable for human application, and were adulterated and misbranded.

90.     At all relevant times, the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 4-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code. Ann. § 26-1-2-313; Kan. Stat. Ann § 84-2-313; Ky. Rev. Stat. Ann. §355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440-2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 104.2313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws Ann. Tit. 31, § 3841 *et seq*; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313l; W. Va. Code § 46-2-313l Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann § 402.313, and Wyo. Stat. §34.1-2-313.

91.     At the time that Defendant marketed and sold its Body Spray Products, it recognized for the purposes for which the products would be used, and expressly warranted the products were suitable for human application, FDA compliant, and not

adulterated or misbranded. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiffs and each Class member, including by not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

92.     Plaintiffs and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Body Spray Products manufactured and sold by Defendant.

93.     Defendant breached its express warranties with respect to its Body Spray Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

94.     Plaintiffs and each Class member would not have purchased the Body Spray Products had they known the products contained benzene, were not suitable for human application, did not comply with FDA standards, and/or were adulterated and misbranded.

95.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and other Class members have been injured and suffered damages in the amount of the purchase price of their Body Spray Products, and any consequential damages resulting from the purchases, in that the Body Spray Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A. That the Court determine that this action may be maintained as a class action under Federal Rule of Civil Procedure 23, that Plaintiffs be named as Class Representatives, that the undersigned be named as Lead Class Counsel, and direct that notice of this action be given to Class Members;

B. That the Court enter an order declaring that Defendant's actions, as set forth in this Complaint, violate the state laws set forth above;

C. That the Court award Plaintiffs and Class members damages, treble damages, punitive damages, and/or restitution in an amount to be determined at trial;

D. That the Court issue appropriate injunctive and other equitable relief against Defendant;

E. That the Court award Plaintiffs pre- and post-judgment interest;

F. That the Court award Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses, including costs of consulting and testifying experts; and

G. That the Court award any and all such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Date: December 17, 2021                 Respectfully Submitted,

**Markovits, Stock & DeMarco, LLC**

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Christopher P. Stock (0075443)
Markovits, Stock & DeMarco, LLC   3825
Edwards Road, Suite 650 Cincinnati, OH
45209
Telephone: (513) 651-3700
Fax: (513) 665-0219
bmarkovits@msdlegal.com
tcoates@msdlegal.com
cstock@msdlegal.com

Ashlea G. Schwarz (*pro hac vice forthcoming*)
Sean R. Cooper (*pro hac vice forthcoming*)
Steven L. Rowe (*pro hac vice forthcoming*)
Paul LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
T: (816) 984-8100
F: (816) 984-8101
Rick@PaulLLP.com
Sean@PaulLLP.com
Steven@PaulLLP.com

**ATTORNEYS FOR PLAINTIFFS**